(No. 53493.—

HERMAN J. KIRKWOOD, Appellant, v. THE INDUS-TRIAL COMMISSION *et al.* (Security Roofing and Siding Co., Inc., Appellee).

*Opinion filed February 3, 1981.*

SIMON, J., took no part.

Bennett, Willoughby & Latshaw, P.C., of Decatur (K. Michael Latshaw, of counsel), for appellant.

Alfred R. Bonaldi, of Keefe & De Pauli, P.C., of East St. Louis, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

The issue in this appeal is whether the Industrial Commission's finding that the claimant was not an employee, but an independent contractor, when he was injured, was against the manifest weight of the evidence. The claimant, Herman J. Kirkwood, had been applying siding to a home pursuant to an agreement with Security Roofing and Siding Co., Inc. (Security). He was injured after falling from a scaffold. He filed an application for adjustment of claim

under the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*). The arbitrator and Industrial Commission denied compensation. The circuit court of Coles County confirmed the decision of the Industrial Commission. The claimant appeals directly to this court under our Rule 302(a) (73 Ill. 2d R. 302(a)). We hold that the decision of the Industrial Commission was not against the manifest weight of the evidence.

The claimant had been applying siding to homes since 1970. He had worked for Kool Vent Company for about a year when he and his brother formed Kirkwood Brothers Construction Company. They were in business under that name for approximately seven years. In October 1977, the company ceased doing business and claimant joined a partnership called Woolen Home Improvement, which also was engaged in applying siding. On August 1, 1978, the claimant withdrew as a member of that partnership. On that same date, the claimant, his son and two friends, Bob Green and Bob Craft, began to do the same work on projects supplied by Security. Project negotiations were discussed solely between Security and the customer. After negotiations were complete, Security would add that project to the work list posted at its office. The siding crews with which Security dealt could then pick a project from the list. The claimant, his son and his friends comprised one of these crews.

Job specifications and materials for projects on which the claimant's crew worked were provided by Security. The crew did not pay for materials. The crew provided its own tools, equipment, trucks, and scaffolding. It likewise set its own hours and applied the siding without supervision. A representative of Security would, from time to time, visit the job site to be sure the work was satisfactory. The crew made no warranties to the customer beyond those made by Security.

The crew was paid on a piecework basis, that is, by the

amount of material applied to a building, receiving a lump sum check at the end of each job. The checks were made out to either Kirkwood Home Improvements or Kirkwood Applicating. No taxes or social security were withheld by Security. Expenses were deducted by the claimant, who then divided the remainder among the crew members. Security's checks to Kirkwood were paid from Security's general account, not its payroll account.

On August 21, 1978, claimant was injured while working at a project site. The scaffolding which was owned and erected by the claimant collapsed, causing him to fall approximately 20 feet. After the claimant's injury, the crew discontinued further work on the project. Security paid Kirkwood Applicating for work already done on the project and arranged to have another applicating service complete the job.

The arbitrator, in denying compensation, found that the claimant was operating as an independent contractor on August 21, 1978, and that the relationship of employee and employer did not exist between Kirkwood and Security on that date. The Industrial Commission affirmed, and the circuit court of Coles County confirmed the decision of the Commission. In appealing to this court, the claimant argues that he was an employee and not an independent contractor and that the Industrial Commission's decision to the contrary is against the manifest weight of the evidence and must be reversed.

The claimant's argument places great reliance upon similarities between this case and the cases of *Mastercraft Co. v. Industrial Com.* (1974), 58 Ill. 2d 155, and *Kirkwood Brothers Construction v. Industrial Com.* (1978), 72 Ill. 2d 454. In each of those cases the injured party was found to be an employee. Contending that the facts of *Mastercraft* and *Kirkwood* are identical to the case at bar, the claimant argues that the injured party here must also be considered an employee. While the facts of each case

are quite similar to the case at bar, each is distinguishable.

The significant differences between those cases and the one we are now considering is that from the facts in each of those cases the Industrial Commission found the claimant to be an employee and not an independent contractor. In both cases this court acknowledged that if the undisputed facts permit inferences to be drawn either way, that is, that the claimant was an employee or that he was an independent contractor, then the Commission alone is empowered to draw that inference, which will not be set aside unless against the manifest weight of the evidence.

Admittedly, the facts in *Mastercraft* and *Kirkwood* are strikingly similar to those in our case, but they are not identical. In *Mastercraft,* for instance, the employer owned the scaffold, sawhorses and cutting boards. The employer's foreman supervised and inspected the performance of the claimant's work. Although the claimant in *Mastercraft* did work in a crew, each member of the crew was paid separately, except when the claimant would, from time to time, hire somebody to help him. Also, in *Mastercraft,* the claimant would on occasion collect from the homeowner and turn the money over to the employer.

In *Kirkwood* it appears that, for the job in question, the agreement was to pay the claimant and his coworker $2,450 upon completion of the job. Also, the salesman who sold the job had responsibilities beyond those of a salesman and functioned as an overseer of the job. When the owner requested a change in the plans that had been agreed on, the salesman came to the job site and discussed these changes with the owner, the claimant and his coworker.

In *Greenberg v. Industrial Com.* (1961), 23 Ill. 2d 106, 108, this court said: "The question of whether a person is an independent contractor or an employee is often a difficult one because elements pertaining to both relationships may be present." In our case, as in *Mastercraft* and

*Kirkwood,* elements of both an employee status and that of an independent contractor are present, and inferences can be drawn either way from the undisputed facts in all three cases. In *Mastercraft* and in *Kirkwood* we found the inferences drawn by the Industrial Commission not to be against the manifest weight of the evidence. In this case, although the Industrial Commission drew inferences contrary to those in *Mastercraft* and *Kirkwood,* we likewise find these inferences not to be contrary to the manifest weight of the evidence.

Determining whether one is an independent contractor or an employee is often a vexing problem. (*O'Brien v. Industrial Com.* (1971), 48 Ill. 2d 304, 307.) Since many jobs contain elements of each, there is no clear line of demarcation between the status of employee and independent contractor. (*Bauer v. Industrial Com.* (1972), 51 Ill. 2d 169; *Henry v. Industrial Com.* (1952), 412 Ill. 279; *Immaculate Conception Church v. Industrial Com.* (1947), 395 Ill. 615; *Kehrer v. Industrial Com.* (1937), 365 Ill. 378.) For this reason, when the facts of a particular case are susceptible to either interpretation, it is within the Industrial Commission's province to draw inferences and evaluate the credibility of the witnesses in arriving at a decision. (*C. Iber & Sons, Inc. v. Industrial Com.* (1980), 81 Ill. 2d 130, 136; *Eagle Sheet Metal Co. v. Industrial Com.* (1980), 81 Ill. 2d 31; *O'Dette v. Industrial Com.* (1980), 79 Ill. 2d 249; *Minnesota Mining & Manufacturing Co. v. Industrial Com.* (1979), 78 Ill. 2d 182; *Phelps v. Industrial Com.* (1979), 77 Ill. 2d 72; *Keystone Steel & Wire Co. v. Industrial Com.* (1978), 73 Ill. 2d 290.) On review, that decision will only be reversed if it is against the manifest weight of the evidence. *Gladstone v. Industrial Com.* (1980), 79 Ill. 2d 236, 240; *Scott v. Industrial Com.* (1979), 76 Ill. 2d 183; *Alexander v. Industrial Com.* (1978), 72 Ill. 2d 444; *Pantle v. Industrial Com.* (1975), 61 Ill. 2d 365; *Quick v. Industrial Com.* (1972), 53 Ill. 2d

46; *Williams v. Industrial Com.* (1971), 49 Ill. 2d 317; *Lawrence v. Industrial Com.* (1945), 391 Ill. 80.

This court has considered various factors in resolving the question of whether a workman is an employee or an independent contractor; *i.e.,* amount of supervision and control, the method of making payment, the right to discharge, the skills required, the source of materials and tools, and the work schedule. Most frequently emphasized is the right to control the workman and the details of his work. (See *O'Brien v. Industrial Com.* (1971), 48 Ill. 2d 304.) The pronouncements of this court in this area are necessarily binding on the Commission and are followed by it in making its determinations. The approach this court has followed could conceivably lead to inconsistent results in identical factual situations, as the claimant argues has happened in this case as compared to *Mastercraft* and *Kirkwood.* Such results are irksome, particularly to Herman Kirkwood, the claimant in this case since in *Kirkwood v. Industrial Com.* he was found to be an employer, whereas in this case, under very similar arrangements, when he is the claimant, he is found to be an independent contractor.

Professor Larson suggests that the traditional elements considered by courts in determining whether a workman is an employee or an independent contractor were adopted from the common-law master-servant concept and are not particularly appropriate in determining whether a workman is an employee for purposes of workmen's compensation acts. For instance, the degree of control that can be exercised over a workman and the performance of his work is a significant factor in determining whether the master is to be held liable vicariously for the acts of his servant. However, workmen's compensation law is concerned not with injuries *by* the employee, but injuries *to* the employee, and the right to control his activities does not have the same significance as it has in determining whether the employer should be responsible for the acts

of his servant. Professor Larson suggests that the right to control the workman should not be the most relevant factor in determining if a workman is an employee in a compensation case. More important to consider is the nature of the claimant's work in relation to the regular business of the employer. (1C A. Larson, Workmen's Compensation secs. 43.42, 43.50 (1980).) This approach can be best explained by quoting from Professor Larson's treatise:

"The theory of compensation legislation is that the cost of all industrial accidents should be borne by the consumer as a part of the cost of the product. It follows that any worker whose services form a regular and continuing part of the cost of that product, and whose method of operation is not such an independent business that it forms in itself a separate route through which his own costs of industrial accident can be channelled, is within the presumptive area of intended protection." 1C A. Larson, Workmen's Compensation sec. 43.51, at 8—17 to 8—18 (1980).

In section 43.52, under the heading of "Relativity as essential part of test," Professor Larson states:

"Note that the factor here stressed is in two parts: the nature of the claimant's work, and its relation to the employer's work. The nature of the claimant's work, in the abstract, is seldom a safe guide in itself, and for this reason it is dangerous to rely on precedents classified solely by the character of the worker's job — for example, to say that window-washers are usually held to be employees while lawyers are usually held to be independent contractors. If I, as a private householder, call upon a window-washing company and engage it to do what amounts to one day's work on my house, I am probably not an employer. But an industrial plant which at regular intervals keeps this same company busy doing what otherwise would be done through its own employees could be held an employer. Similarly, when I seek the services of a lawyer, on the occasion of one of my rare encounters with the legal process, the lawyer is obviously not my employee. But the same lawyer, engaged continuously by a law firm or insurance company, can be

an employee.

> This test, then, which for brevity will be called the 'relative nature of the work' test, contains these ingredients: the character of the claimant's work or business — how skilled it is, how much of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so on — and its relation to the employer's business, that is, how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job."
> 1C A. Larson, Workmen's Compensation sec. 43.52, at 8–19 to 8–20 (1980).

This court, while adhering to the belief that the right to control the details of a worker's performance is the essential element in determining whether a worker is an employee has, nonetheless, on several occasions acknowledged the significance of the nature of the work performed in relation to the general business of the employer. See *Henry v. Industrial Com.* (1952), 412 Ill. 279, 283; *Coontz v. Industrial Com.* (1960), 19 Ill. 2d 574, 578; *Alexander v. Industrial Com.* (1978), 72 Ill. 2d 444, 450; *Kirkwood Brothers Construction v. Industrial Com.* (1978), 72 Ill. 2d 454, 460.

We believe that the approach suggested by Professor Larson would lead to more consistent and more logical results than emphasizing the common-law master-servant elements of tort liability. Indeed, the latter approach may well have led to a contrary conclusion in the case now before us. The tests presently applied in determining whether a worker is an employee or an independent contractor are the results of court pronouncements and could no doubt be abandoned by judicial decision. (See *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 25, *cert. denied* (1960), 362 U.S. 968, 4 L. Ed. 2d 900, 80 S. Ct. 955.) The tests now applied are long-standing, business relationships have been structured in

consideration of them, and insurance protection against compensation claims has been tailored with these tests in mind. It could be unnecessarily disruptive, and expose employers to risks against which they have had no opportunity to insure, for this court to abruptly abandon its previous approach and follow the suggestions of Professor Larson. In any event, it would be inappropriate for this court in this case to abandon consideration of the elements heretofore deemed significant in favor of Professor Larson's suggestions, since the suggestions were neither briefed nor argued.

For the reasons heretofore stated in this opinion, the judgment of the circuit court of Coles County is affirmed.

*Judgment affirmed.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.