CHARLES ELLIOT, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (The County of Cook, Appellant).

First District (Industrial Commission Division)   No. 1—86—1199WC

Opinion filed February 11, 1987.—Rehearing denied March 30, 1987.

Richard M. Daley, State's Attorney, of Chicago (Dennis J. DaPrato, Assistant State's Attorney, of counsel), for appellant.

Nicholas Liontakis, Ltd., of Homewood, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Claimant, Charles Elliot, sought benefits under the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*) after allegedly injuring his back while working for respondent, Cook County. An arbitrator found claimant's injury arose out of and in the course of his employment with respondent. The arbitrator awarded $246.15 per week for 23 weeks for temporary total disability and found claimant's disability had not yet reached a permanent condition. On review, the Industrial Commission upheld that decision, and the trial court confirmed the Commission's decision.

On appeal, respondent contends that Commission's decision is against the manifest weight of the evidence because the fall was idiopathic, caused by preexisting weakness in claimant's right leg; that at the time of the accident claimant was not performing his assigned duties; and that claimant failed to prove his present condition differed from his condition prior to December 24, 1984.

On December 24, 1984, claimant was a correctional officer at Cook County Department of Corrections when he fell while walking down a flight of stairs in the prison. On December 31, 1984, claimant filed an application for adjustment of claim. At the hearing before an

arbitrator, claimant testified: "While going down the stairs into the lower deck [of the prison], I slipped on the bottom stair, my leg giving away. I twisted my back and fell on my buttocks causing pain." Claimant was not carrying anything when he fell. He immediately experienced pain going down his right leg to his foot. Claimant agreed that he was not bending or lifting and that he was just walking and his leg gave out. On the date of the accident, claimant submitted a written report stating: "My right leg gave way while going down the steps *** ."

Regarding his prior medical history, claimant testified that the pain in his back radiating down his right leg began prior to the injury at issue. His right leg had also given out before at home. On August 13, 1978, claimant injured his back in a work-related accident for which he subsequently received workers' compensation benefits. He underwent back surgery on March 23, 1979, and was placed on permanent light duty when he returned to work in December 1979. On January 30, 1984, claimant was involved in an automobile accident in which he injured his back. He was hospitalized and received steroid injections and other medical treatment. He returned to work on August 13, 1984. At that time he suffered from pain in his back and some numbness in his leg.

A report of the March 23, 1979, surgery performed by Dr. William B. Fischer indicated that claimant had a history of low back pain radiating down the right leg. The surgery revealed a bulging disc at L4-L5 and a lumbar laminectomy and discectomy were performed.

A hospital discharge summary report dated March 3, 1984, stated that claimant had been hospitalized since February 27 following an auto accident and that Dr. Fischer was the attending physician. The history noted the previous laminectomy and that claimant had "been asymptomatic since that time, until January 30, [1984] when the patient was involved in a motor vehicle accident and began to experience severe back pain radiating down the right buttock and into the left leg. The patient has noted parasthesias and numbness over the right dorsal foot as well." Claimant was treated with bed rest, steroid injections, and a cervical collar. A March 1, 1984, report signed by a consulting physician indicated that claimant had pain and numbness down the right leg, right foot drop, and difficulty walking due to the right leg weakness. A March 2, 1984, certification of disability status signed by Dr. Fischer referred to claimant's low back and right leg sciatica.

A physical therapist's report dated March 14, 1984, indicated that following the January automobile accident, claimant had been experi-

encing pain in the lower back and right lower extremity. Claimant demonstrated decreased strength throughout the right lower extremity. He complained of numbness in the toes of the right foot and along the lateral aspect of the right thigh and hip. "He relates he has significant difficulty in bearing weight on the right lower extremity." On April 18, 1984, the therapist reported that claimant continued to complain of numbness along the right side and distally throughout into the toes.

On May 10, 1985, Dr. Sid John Shafer wrote that he had examined claimant. Claimant gave a history of the earlier laminectomy, following which he "made a very good recovery." Claimant "did have occasional backache but did not have pain in the right lower extremity and he was able to work." On the date of the report, claimant complained of constant pain in the back of the right thigh and right calf with numbness in the right toes and some tingling on the outside of the right foot. Dr. Shafer concluded that in all probability the accident of December 24, 1984, contributed to claimant's present complaints.

Dr. Prasit R. Sri, an orthopedic surgeon, testified at an evidence deposition that he began treating claimant on May 7, 1984. He had not reviewed any of claimant's medical records prior to that date. Claimant's condition was diagnosed as low back pain with right sciatica, with L5 nerve root involvement on the right side. Dr. Sri believed that the December 24, 1984, accident either aggravated "his underlying problem" or created a new problem. In regard to claimant's previous underlying problems, Dr. Sri referred to the 1979 laminectomy and the 1984 steroid treatments following the January 1984 automobile accident. Dr. Sri agreed that after the automobile accident, claimant had nerve root involvement and right sciatica and that he had the same problems following the accident at issue before us. Regardless of whether the medical records prior to the December 24 accident showed claimant's condition was better or worse, he would not alter his opinion that the December 24 accident could have aggravated a previous problem or created a new problem.

Dr. Sri also testified that if claimant stated his right leg gave out, causing him to fall, it was possible that this could be attributed to his prior condition of sciatica on the right side. The fall possibly could have been caused due to the weakening of the right leg. "Well, anything's possible, but I cannot make a conclusion because so many things can cause [the] leg of his to give out, too." Dr. Sri agreed that a person with L5 nerve root involvement down the right side, or sciatica, would experience pain, numbness, and tingling in the right lower extremity.

Various employees of respondent testified as to claimant's assigned and actual duties on December 24, 1984.

The arbitrator found that on December 24, 1984, claimant sustained accidental injuries which arose out of and in the course of his employment with respondent. The arbitrator adopted the opinion of Dr. Sri that the fall at work was either a new injury or an aggravation of the previously compensated injury of August 13, 1978. On review, the Commission adopted the findings and decision of the arbitrator. The Commission found that claimant's injury was not due to an idiopathic fall, but instead was due to slipping on the stairs. The trial court confirmed the Commission's decision, finding that it was not against the manifest weight of the evidence. The court noted respondent's argument that claimant had a preexisting back injury with resultant weaknesses in his leg, but held that the resolution of conflicting evidence and inferences was for the Commission.

▆▆▆ The question of whether an accident arose out of the employment is to be determined by the Commission and its decision will not be set aside unless it is against the manifest weight of the evidence. (*Prince v. Industrial Com.* (1959), 15 Ill. 2d 607, 155 N.E.2d 552.) Claimant must show that the injury is due to a cause connected to the employment to establish that it arose out of the employment. (*Oldham v. Industrial Com.* (1985), 139 Ill. App. 3d 594, 487 N.E.2d 693.) Claimant here argues that the fall was unexplained, while respondent counters that the accident did not arise out of claimant's employment because the fall was idiopathic in nature. An idiopathic fall results from an internal, personal origin, and Illinois denies compensation for idiopathic falls. (139 Ill. App. 3d 594, 487 N.E.2d 693.) An unexplained fall results from a neutral origin, and Illinois awards compensation for unexplained falls. (*Chicago Tribune Co. v. Industrial Com.* (1985), 136 Ill. App. 3d 260, 483 N.E.2d 327.) We hold that the Commission's decision that claimant's fall was unexplained, and not idiopathic in nature, or that the injury could be an aggravation of the work-related injury of August 13, 1978, is contrary to the manifest weight of the evidence.

Claimant's own testimony and the medical evidence clearly demonstrate that the fall resulted from an internal, personal origin as a result of the prior automobile accident. Claimant consistently stated that his right leg gave out while he was walking down the stairs. He testified, "I slipped on the bottom stair, my leg giving way." In his written report of the accident, claimant stated, "My right leg gave way ***." Claimant also testified that prior to December 24, 1984, he suffered from radiating pain and numbness in his right leg and that

his right leg gave out on him at home. The medical evidence supports this testimony.

Following the January 1984 accident, claimant suffered from pain, numbness, and weakness of the right lower extremity. The March 1, 1984, consulting physician's report indicates claimant experienced pain and numbness down the right leg, right foot drop, and difficulty walking due to the right leg weakness. The March 2, 1984, disability certification refers to claimant's right leg sciatica. The March 3, 1984, hospital discharge summary states that claimant suffered from a severe back pain, radiating down the right buttock, with parasthesias and numbness over the right dorsal foot. The March and April 1984 physical therapy reports indicate claimant experienced right lower extremity pain, decreased strength throughout the right lower extremity, numbness in the toes of the right foot and along the lateral aspect of the right thigh and hip, and that claimant had significant difficulty bearing weight on the right lower extremity. All the evidence indicated claimant's idiopathic condition resulting from the automobile accident caused the subject fall.

The Commission's finding that the injury here could be an aggravation of the work-related injury of August 13, 1978, is also contrary to the manifest weight of the evidence. The record reveals that claimant had fully recovered after the 1978 work-related accident and resulting surgery in 1979, but began to have problems with his right lower extremity following the automobile accident. In February 1984, Dr. Fischer noted that claimant had been asymptomatic following the 1979 surgery which Dr. Fischer performed. In January 1984, however, claimant began experiencing severe pain radiation, parasthesias, and numbness on the right side. The March 1984 physical therapy reports also tie the right lower extremity pain, numbness, and weakness to the automobile accident. Dr. Fischer's August 1984 report ties the automobile accident to the onset of neck and low back pain. The February 1985 rehabilitation report also connects the automobile accident to the development of back and neck pain. Dr. Shafer's 1985 report indicates that claimant said he made a very good recovery after the 1979 surgery and that he did not have pain in the lower right extremity after that surgery.

The record clearly reveals, then, that there was no history of complaints involving the right leg or foot during the period between December 1979 when claimant returned to work following the 1978 work-related accident and January 30, 1984, when he was involved in an automobile accident. Dr. Sri's opinion that claimant's present condition could be an aggravation of the 1978 injury is of little eviden-

tiary value, both because of his admitted uncertainty as to the cause and because he never reviewed medical records relating to the 1978 or January 1984 accidents. The Commission's finding that the present injury could be an aggravation of the previous compensated 1978 injury was against the manifest weight of the evidence.

Claimant's reliance on *Chicago Tribune Co. v. Industrial Com.* (1985), 136 Ill. App. 3d 260, 483 N.E.2d 327, for the proposition that this fall was unexplained rather than idiopathic in nature is misplaced. In that case, the employee fell in a lobby and the fall was found to be unexplained and therefore compensable. There, unlike the present case, no evidence was presented of any physical condition existing in the claimant which could have caused the fall. Moreover, in *Chicago Tribune* we found that the Commission could have drawn an inference that there might have been ice and water on the floor as a result of snow being tracked into the lobby where the employee fell. No such inference may be made in the present case.

Claimant contends that even if the fall was idiopathic in nature it is still compensable. An idiopathic fall is compensable if the employment significantly contributed to the injury by placing the employee in a position increasing the dangerous effects of the fall. (*Ervin v. Industrial Com.* (1956), 364 Ill. 56, 4 N.E.2d 22.) Claimant argues that his employment significantly contributed to the injury because of the fact that he was on a stairway at work. More is required than the fact that an injury occurred at the employee's place of work. (See *Greater Peoria Mass Transit District v. Industrial Com.* (1980), 81 Ill. 2d 38, 405 N.E.2d 796; *Williams v. Industrial Com.* (1967), 38 Ill. 2d 593, 232 N.E.2d 744.) Claimant testified that he was "just walking down the stairs." The act of walking down the stairs itself does not establish a risk greater than those faced outside of work. (See *Oldham v. Industrial Com.* (1985), 139 Ill. App. 3d 594, 487 N.E.2d 693.) Claimant could have been walking downstairs in his home or anywhere, and the same injury might have occurred. Claimant himself testified that his right leg had previously given out at home. The need to walk down the stairs is not unique to claimant's work. There was no evidence that the stairs themselves were unique to his employment and increased the danger of injury. We find, therefore, that claimant's injury does not fall within the exception to the general rule which denies coverage for idiopathic falls.

In view of our holding, we need not address respondent's other contentions regarding whether claimant deviated from his assigned duties or whether claimant failed to prove a change in his physical condition after the December 24, 1984, accident.

For the foregoing reasons, the judgment of the circuit court of Cook County confirming the decision of the Industrial Commission is vacated, and the decision of the Commission is reversed.

Judgment vacated; order of the Commission is reversed.

BARRY, P.J., and WOODWARD, McCULLOUGH, and KASSERMAN, JJ., concur.