JERRY STAPLETON, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Peabody Coal Company, Appellee).

Fifth District No. 5—95—0499WC

Opinion filed June 7, 1996.—Rehearing denied August 2, 1996.

RARICK, J., concurring in part and dissenting in part.

Harris, Lambert, Howerton & Dorris, of Marion, for appellant.

Keefe & Depauli, P.C., of Fairview Heights, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant Jerry Stapleton appeals from an order of the circuit court of St. Clair County confirming a decision of the Illinois Industrial Commission (Commission) denying claimant's claim for benefits due to an injury to his right knee. The respondent employer is Peabody Coal Company.

The arbitrator awarded claimant $416.67 for 51 weeks for temporary total disability and $20,720.65 for necessary first aid, medical, surgical, and hospital services. 820 ILCS 305/8(a), (b) (West 1994). The Commission reversed, finding the injury to be an idiopathic fall and that claimant failed to prove it resulted from an increased risk of harm associated with his employment.

The issues are whether (1) the Commission's decision that claimant failed to prove an accident arising out of his employment was against the manifest weight of the evidence, and (2) the procedure whereby the Commission makes original findings of fact without taking testimony (see 820 ILCS 305/19(e) (West 1994)) is a violation of the due process clause of the fourteenth amendment of the United States Constitution. We affirm.

The evidence presented at arbitration will not be set forth in detail.

Claimant's application for adjustment of claim alleged an injury on May 12, 1992. On that form, in response to the inquiry of "How did Accident or Illness occur (Type)?" claimant responded, "Walking, left knee gave way and twisted right knee."

At the arbitration hearing, Robert Johnson and Merle Schuessler, fellow employees of claimant, testified that on May 12, 1992, near the end of the meal break at about 4:30 a.m., claimant fell while returning to work. Neither saw claimant fall.

Claimant testified that, prior to May 12, 1992, he had been off work with injuries to his left knee. On February 14, 1991, he stepped off a scoop, fell, and injured the left knee. He was off work until October 28, 1991. On January 22, 1992, he slipped while carrying a bucket of water and again injured the left knee. He returned to work on May 11, 1992. Because of these other two injuries, he wore a brace on his left knee.

With respect to the May 12, 1992, injury, claimant was taken to Sparta Hospital emergency room and was later treated by Dr. Richard Morgan. At the emergency room, he told the nurse and doctor what happened. On May 13, 1992, when he saw Morgan, he told him what happened. Claimant was referred to respondent's exhibit No. 2, an injured employee report dated May 22, 1992, which he signed. In response to the question "How did the accident happen?" claimant wrote, "Knee gave way and Fell."

On redirect examination, claimant was asked what he told Morgan as to how the injury occurred. Claimant testified: "I was walking back to my work area, and I really can't say what happened. I can't say what caused me to fall. All I know is I fell and—uh—hurt my right knee." There was some question concerning Morgan's report about whether claimant had fallen, but claimant went to Morgan and corrected him about that. Morgan corrected the medical history after that. Claimant identified petitioner's exhibit No. 3, which was an employee confirmation of work-related injury report completed on the day of injury. He did not fill it out but signed it after reading it. In the area explaining how the injury occurred, the report stated, "left leg gave way while getting around debris—Fell injuring both knees."

The emergency room report for Sparta Hospital dated May 12, 1992, included a history taken by a nurse in which claimant denied injury to either knee and stated the right knee just twisted and "it went out from under him." The doctor's notation on that report indicated claimant's left knee "gave out unexpectedly—hurt Rt. knee—stumbling to catch balance."

Morgan, an orthopedic surgeon, testified that he first saw claimant for this injury on May 13, 1992. The history which Morgan recorded in his notes for that date was that claimant had just been back to work two days following the injuries to the left knee. He was working around a power box and talking to a fellow employee on the morning of May 12 when he felt the immediate onset of pain in his right knee. Claimant did not remember falling or losing his footing but just experienced the onset of pain. Claimant said he thought something had hit him, looked down, and did not see anything. Claimant said the pain caused him to fall. Claimant had persistent pain following the onset of pain in the right knee. Because he could not ambulate, claimant was taken to Sparta Hospital.

After a further conversation with claimant, Morgan supplemented the history on October 6, 1992. Morgan's notes for that date stated:

"There was some question about one of the notes he had in his

report. I indicated that he did not remember falling and he now states that he can really remember distinctly a time when he did fall and wrench his knee. Apparently this was a typo on the part of my secretary."

Morgan testified that the accident in May 1992 which claimant described to him could have caused the anterior cruciate injury to claimant's right knee.

The arbitrator found a compensable injury and awarded benefits. The Commission reversed the arbitrator's decision. The Commission found claimant failed to prove that he sustained an accident arising out of employment on May 12, 1992. The Commission reasoned (1) claimant did not know the cause of the fall and stated his left leg "went out" on him; (2) claimant had two prior injuries to the left knee; (3) claimant's testimony and the medical history did not provide a link between the conditions in the mine, including hanging electrical wires and moist slate, and claimant's unwitnessed fall; and (4) the medical histories suggested the fall was idiopathic, caused by the onset of pain or the giving way of one of his knees.

■ Claimant has the burden of proving all of the essential elements of his claim by a preponderance of the evidence. *Caterpillar Tractor Co. v. Industrial Comm'n*, 83 Ill. 2d 213, 216, 414 N.E.2d 740, 742 (1980). Claimant must prove that he was injured in an accident which arose out of and in the course of his employment with respondent. "In the course of" employment refers to the time, place, and circumstances under which the accident occurred, while "arose out of" employment means there is a causal connection between the accidental injury and some risk incidental to or connected with the activity an employee must do to fulfill his duties. *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 57-58, 541 N.E.2d 665, 667 (1989). "[A]n injury is not compensable unless it is causally connected to the employment." *Caterpillar*, 129 Ill. 2d at 62, 541 N.E.2d at 669.

■ Generally, the determination of whether an injury arose out of and in the course of claimant's employment is a question of fact for the Commission, and the Commission's determination thereof will not be set aside unless it is contrary to the manifest weight of the evidence. *Hansel & Gretel Day Care Center v. Industrial Comm'n*, 215 Ill. App. 3d 284, 292-93, 574 N.E.2d 1244, 1250 (1991). In resolving questions of fact, it is the province of the Commission to assess the credibility of witnesses, resolve conflicts in the evidence, assign the weight to be accorded the evidence, and draw reasonable inferences from the evidence. *Paganelis v. Industrial Comm'n*, 132 Ill. 2d 468, 483, 548 N.E.2d 1033, 1040 (1989); *Kirkwood v. Industrial Comm'n*, 84 Ill. 2d 14, 20, 416 N.E.2d 1078, 1080 (1981); *Pazara v. Industrial*

*Comm'n*, 81 Ill. 2d 76, 80, 405 N.E.2d 767, 769 (1980); *Kress Corp. v. Industrial Comm'n*, 190 Ill. App. 3d 72, 79, 545 N.E.2d 1046, 1050 (1989). The test of whether the Commission's decision is against the manifest weight of the evidence is whether there was sufficient factual evidence to support it. *Benson v. Industrial Comm'n*, 91 Ill. 2d 445, 450, 440 N.E.2d 90, 93 (1982). In order for the decision to be against the manifest weight of the evidence, a review of the record must disclose that the conclusion opposite to that reached by the Commission was clearly the proper result. *Wagner Castings Co. v. Industrial Comm'n*, 241 Ill. App. 3d 584, 595, 609 N.E.2d 397, 405 (1993); *Flynn v. Cohn*, 220 Ill. App. 3d 393, 400, 581 N.E.2d 30, 34 (1991).

■ A claimant may not recover if the risk to which he was exposed was a risk personal to him. An idiopathic fall is a type of accident which results from an internal, personal weakness of the claimant. If the fall is unexplained, resultant injuries are compensable. If the fall is idiopathic, resultant injuries are not compensable unless the employment significantly contributed to the injury by placing claimant in a position of greater risk of injury from falling. *Caterpillar*, 129 Ill. 2d at 58-59, 541 N.E.2d at 667; *Nabisco Brands, Inc. v. Industrial Comm'n*, 266 Ill. App. 3d 1103, 1106, 641 N.E.2d 578, 581-82 (1994); *Elliot v. Industrial Comm'n*, 153 Ill. App. 3d 238, 242-44, 505 N.E.2d 1062, 1065-67 (1987).

■ In this case, the Commission's decision was not against the manifest weight of the evidence. Although claimant testified he did not know what made him fall, his statements in reports and medical histories support the Commission's finding of idiopathic injury resulting from one of his knees giving out. Nothing in the record ties the condition of the mine to claimant's injury. Claimant, the only witness to the accident, never said he slipped on the slate or tripped on an electrical wire.

A court of review will not substitute its judgment for that of the Commission merely because other inferences could have been drawn from the evidence. Instead, the Commission's finding must be shown to be against the manifest weight of the evidence. *Brady v. Louis Ruffolo & Sons Construction Co.*, 143 Ill. 2d 542, 549, 578 N.E.2d 921, 924 (1991); *Pazara*, 81 Ill. 2d at 80, 405 N.E.2d at 769.

■ The next issue is whether the procedure whereby the Commission makes original findings of fact without taking testimony is a violation of claimant's right to due process. We address this issue although it could be deemed waived for failure to raise it before the Commission. See *Taylor Coal Co. v. Industrial Comm'n*, 301 Ill. 381, 387-88, 134 N.E. 169, 171 (1922).

Claimant cites several cases relating to the procedure employed and the deference given to the Commission decision, but no case is cited relating to the question of how these provisions violate due process. The appellate court is not a depository into which an appellant may dump the burden of research. *Bank of Illinois v. Thweatt*, 258 Ill. App. 3d 349, 362, 630 N.E.2d 121, 130 (1994). The appellant must support his contention with citation of authority. 155 Ill. 2d R. 341(e)(7). But that obligation is not restricted to the appellant. The respondent as appellee must also support its argument with citation of authority. 155 Ill. 2d R. 341(f). Respondent has cited no authority whatsoever on this issue. Nevertheless, the merits will be addressed.

The claimant does not directly challenge the constitutionality of section 19(e) of the Workers' Compensation Act (Act), which states in relevant part:

"In all cases in which the hearing before the arbitrator is held after December 18, 1989, no additional evidence shall be introduced by the parties before the Commission on review of the decision of the Arbitrator." 820 ILCS 305/19(e) (West 1994).

Claimant is not arguing it is a violation of due process to have a rule in which the Commission does not hear evidence, but that it is what the Commission does with the evidence, *i.e.*, assess credibility and weigh the evidence, which violates due process. Although section 19(e) of the Act does refer to the Commission making findings of fact and conclusions of law, it does not specifically set out the rule that the Commission is to assess the credibility of witnesses and weigh the evidence, although these certainly are functions of fact finders generally. In essence, the claimant challenges the procedure employed by the Commission in reaching a decision and the deference accorded to that decision by the courts. Claimant acknowledges that the manifest weight standard by which courts review Commission decisions and the concept that the Commission is the judge of credibility are judicially created.

Claimant argues that the deference the courts give the Commission's decision and the determination that the Commission exercises original, rather than appellate, jurisdiction arose at a time when the Commission heard evidence. However, even when the Act allowed the Commission the discretion to hear additional evidence, the Commission rule then in effect limited the evidence to be presented at the review hearing to evidence (1) relating to the claimant's condition since the arbitration hearing, (2) relating to matters occurring or conditions which developed after the arbitration hearing, and (3) which was not introduced at the arbitration hearing for good cause. 6 Ill. Reg. 8040, 8048-49 (July 1, 1982); 50 Ill. Adm. Code § 7040.40(b)

(1985). In *Werries v. Industrial Comm'n*, 114 Ill. 2d 43, 49-50, 499 N.E.2d 459, 461-62 (1986), the Supreme Court of Illinois decided that a party could not present only a portion of his evidence before the arbitrator and then supply the deficient portion later before the Commission. Such a procedure would be unworkable. Instead, the arbitrator must have all available evidence in order to render a proper decision, and the failure to make reasonable efforts to present all available evidence to the arbitrator would hamper the efficient administration of the workers' compensation system to the potential detriment of parties in all cases.

The cases cited by claimant, although recognizing that the Commission could consider additional evidence, also recognized that the Commission did not conduct a trial *de novo* even though the Commission had the discretion to allow the parties to introduce additional evidence. These cases did not decide that the Commission's function as fact finder changed if no additional evidence was presented. See *Wirth v. Industrial Comm'n*, 57 Ill. 2d 475, 478-79, 312 N.E.2d 593, 595 (1974); *Rodriguez v. Industrial Comm'n*, 371 Ill. 590, 593, 21 N.E.2d 741, 743 (1939). In *J&J Transmissions v. Industrial Comm'n*, 243 Ill. App. 3d 692, 700, 612 N.E.2d 877, 882 (1993), and *Dillon v. Industrial Comm'n*, 195 Ill. App. 3d 599, 607, 552 N.E.2d 1082, 1087 (1990), this court held that, even though no additional evidence is heard by the Commission, the Commission is the judge of credibility, weighs the evidence, exercises original jurisdiction, and is not bound by the arbitrator's findings. Therefore, claimant's attempt to argue that these principles only came into existence because the Commission could hear evidence is unpersuasive.

In an administrative proceeding, it is not necessary that the testimony be taken before the same officers who have the ultimate decision-making authority. Administrative proceedings may be conducted by hearing officers who refer the case for final determination to a board, the members of which have not personally "heard" the evidence. Due process requirements are met if the decision-making board considers and bases its determination on evidence contained in a report of proceedings before the hearing officer. *Homefinders, Inc. v. City of Evanston*, 65 Ill. 2d 115, 128, 357 N.E.2d 785, 791 (1976). The procedure employed in this case does not violate claimant's right to due process.

The judgment of the circuit court of St. Clair County confirming the decision of the Commission is affirmed.

Affirmed.

RAKOWSKI, COLWELL, and HOLDRIDGE, JJ., concur.

JUSTICE RARICK, concurring in part and dissenting in part:
I concur with the majority's handling of the due process issue presented in this case, but because I believe claimant's fall was compensable, I also must dissent. It is true as the majority points out that claimant testified he was not sure how the accident happened. But what the majority fails to recognize are the circumstances surrounding the fall. Claimant was in an underground mine walking on wet, slick slate with $1^1/2$- to 4-inch-diameter cables on the ground. The conditions of claimant's employment clearly contributed to the cause of his injury. As the arbitrator stated: "Even if the knee gave way for no apparent reason, the left foot slid rapidly on the moist, slick slate and caused right knee to be caught under the Petitioner very quickly and with greater force." I therefore believe the accident arose out of and in the course of claimant's employment and claimant's condition of ill-being is causally related to the accident.